**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **RICHARD'S PAINT AND BODY SHOP,** | § | |
| **LLC D/B/A CUSTOM CAR CRAFTERS** | § | |
| **Plaintiff, Counter-Defendant** | § | |
| | § | |
| **v.** | § | **NO. A-11-CA-560 AWA** |
| | § | |
| **BASF CORPORATION AND** | § | |
| **FINISHMASTER, INC.,** | § | |
| **Defendants, Counter-Plaintiffs** | § | |

## <u>ORDER</u>

Before the Court are:  Plaintiff's Motion for Entry of Judgment, filed on September 11, 2012 (Clerk's Docket No. 230);  Defendants' Rule 49 Motion for a New Trial, filed on September 18, 2012 (Clerk's Docket No. 237); Defendants' Conditional Motion for Entry of Judgment, filed on September 21, 2012 (Clerk's Docket No. 240); and the Parties' various response and reply briefs. The Court conducted a hearing on these issues on October 3, 2012.

## I.    **Background Facts**

In their Rule 49 Motion for a New Trial, Defendants argue that the Court must order a new trial because the jury's answers to several questions on the verdict form are in direct conflict with each other.  The facts are these:  After an eight-day trial, the Court instructed the jury on the relevant law in a 17-page charge, and gave the jury a ten-question verdict form to complete.  Clerk's Docket No. 216.  The verdict form and charge sent four issues to the jury: (1) Custom Car Crafter's breach of warranty claim on merchantability; (2) CCC's breach of warranty claim on fitness for a particular purpose; (3) CCC's common law fraud claim; and (4) CCC's fraud-based affirmative defense to the Defendants' breach of contract claims.

In the verdict form, Question One addressed liability for the merchantability warranty, Question Two addressed liability for the fitness warranty, and Question Three posed the fraud liability question.  Question Four asked what damages CCC had suffered for any of these claims, with the jury's consideration of that question conditioned on a "yes" answer to at least one of the first three questions.[1]  The jury found that both defendants breached the implied warranty of fitness for a particular purpose with regard to the paint supplied to CCC, but that neither defendant had breached the implied warranty of merchantability.  The jury also found that the Defendants had defrauded CCC.  Because the jury found liability on two of the three claims, it answered Question Four, and awarded CCC $1,500,000 in compensatory damages.  Questions Five and Six addressed punitive damages; Five asked whether CCC had proved its fraud claim by "clear and convincing evidence" (the threshold for awarding punitive damages for fraud under Texas law) and Six asked the jury to fix a punitive damage figure.  The jury found that CCC had in fact proved its fraud claim by clear and convincing evidence, and assessed punitive damages of $1,500,000 against BASF and $750,000 against FinishMaster.

The remaining four questions addressed BASF's and FinishMaster's breach of contract claims for CCC's failure to return the "up-front" money it had been paid under its contracts with the two defendants.  Those contracts required that if CCC terminated the contracts prematurely, it was obligated to return the prepayment, or some part thereof.  Among other things, CCC pled fraud as an affirmative defense to these claims.  At the close of the evidence, it was undisputed that CCC had failed to repay any of the prepaid monies, and the sole remaining issue was CCC's defense of excuse

---

[1]CCC agreed that the damages it suffered from any breach of warranty were the very same damages it suffered from any fraud—the costs of repairing defective paint and lost profits from lost customers.

2

based on fraud.  The Court thus proposed that the only questions the jury should be asked were whether CCC had proven its fraud/excuse defense, and, if not, how much BASF and FinishMaster were each entitled to be repaid.  Questions Seven and Nine posed the fraud defense question as to each of the two defendants, and Questions Eight and Ten asked the amount CCC owed BASF and FinishMaster, respectively.  No party objected to this structuring of the issues.[2]  Notwithstanding the jury having found that BASF and FinishMaster had defrauded CCC, and having awarded not just actual but also punitive damages for that fraud, when it answered the fraud/excuse questions on the contract claims, the jury found that CCC had failed to prove fraud for purposes of that defense, and awarded damages of $176,000.00 to BASF and $100,000 to FinishMaster.

Defendants contend that this verdict contains a fatal inconsistency because the jury was instructed that to answer either the fraud or excuse questions affirmatively they had to find that Defendants made a material false misrepresentation to CCC.  For its part, CCC argues that Defendants waived any inconsistency in the verdict because they failed to raise any objection to the verdict before the jury was discharged.  Alternatively, CCC argues that the jury's findings are not fatally inconsistent and the Court should enter a judgment on that verdict.

## II.    Waiver and Federal Rule of Civil Procedure 49

CCC's primary argument against the granting of a new trial is that BASF and FinishMaster waived their ability to object to the verdict because they failed to object to it before the jury was discharged.  Oddly, whether the waiver argument is even applicable to this verdict depends upon

---

[2]A complicating factor on the fraud defenses to the contract claims was that BASF's contract was governed by New Jersey law, while the FinishMaster contract was governed by Indiana law. Added to this was the fact that CCC's common law fraud claim was brought under Texas law, as Texas is where the allegedly false statements were made.

whether it is characterized as a "general" or a "special" verdict.[3]  In brief, for "general" verdicts some courts have held that a party may not object to an inconsistency in the verdict if the objection is raised after the jury has been discharged.  On the other hand, no such waiver rule is applied by these courts to verdicts considered "special" verdicts.  Thus, whether a verdict is characterized as general or special under Rule 49 is a critical question when there is a potential inconsistency among the jury's answers.

### A.    The Waiver Issue

As mentioned, a number of federal appellate courts have held that a party waives any objection to an inconsistent general verdict under Rule 49(b) if the party fails to raise the objection before the jury is discharged.  *See Fields v. Corizon Health, Inc.*, 2012 WL 3854592 at * 11(11th Cir. Sept. 6, 2012) (finding that a party waives a Rule 49(b) inconsistency challenge if the party does not object before the jury is discharged);  *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 618 (6th Cir. 2007) (same);  *Mason v. Ford Motor Co., Inc.*, 307 F.3d 1271, 1275-6 (11th Cir. 2002) (same); *Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020, 1033-34 (9th Cir. 2003) (same), *cert denied*, 541 U.S. 902 (2004);  *Lockard v. Missouri Pacific R. Co.*, 894 F.2d 299, 304 (8th Cir. 1990) (same); *Diamond Shamrock Corp. v. Zinke & Trumbo, LTD.*, 791 F.2d 1416, 1423 (10th Cir. 1986) (same), *cert. denied*, 479 U.S. 1007 (1986).

In a case that predates all of these decisions, the Fifth Circuit held that an inconsistency objection was waived when the party did not object while the jury was still in court.  *See Stancill v.*

---

[3] "Oddly" because, as will be seen below, the very concept of "general" and "special verdicts" is an arcane one, and is very difficult to apply to current practice.  That such an outdated distinction makes the difference between an entry of a judgment on an otherwise inconsistent verdict being permitted or prohibited is strange, to say the least.

*McKenzie Tank Lines, Inc.*, 497 F.2d 529, 534-35 (5th Cir. 1974) ("By failing to object to the form of the verdict and answers at the time they were announced by the jury, both parties waived any objection to inconsistencies under Rule 49(b)").  In later cases, the circuit rejected the same waiver arguments for Rule 49(a) verdicts.  *See, e.g. Mercer v. Long Mfg. N.C., Inc.*, 671 F.2d 946, 948 n. 1 (5th Cir. 1982) (on rehearing).  In a rather long footnote that gathers cases in the circuit on this issue, the *Mercer* court characterized its previous decision in *Stancill* as having found that a waiver took place, but also emphasized that the trial court had not only asked counsel for any objections before the jury, but also called them to the bench to ask again.  *Id.*  Further, in explaining why no waiver argument could be raised in Rule 49(a) inconsistency situations, the court explained that its prior decisions encouraging parties to raise verdict inconsistencies before the jury is discharged is not the same as requiring the objections:

> Obviously—as it nearly always will be—it would have been better practice here for Defendant Long Manufacturing to have moved for resubmission or to have raised specifically the issue of inconsistent interrogatories prior to the dismissal of the jury. While there are many practices which we recommend parties follow, extolling the virtue of a procedure is not equivalent to mandating that it be followed with the dire consequence of waiver for failure to adopt the practice. We know of no case in this Circuit holding that inconsistencies in special verdicts pursuant to F.R.Civ.P. 49(a) are waived if not raised prior to release of the jury.

*Id.* at 947-48.  Finally, in *Brunner v. Maritime Overseas Corp.*, 779 F.2d 296, 297(5th Cir. 1986), the court relied upon this very argument in a case which did not even make a finding regarding whether the verdict in the case was a general or special verdict.  It is worth quoting this portion of the decision in full:

> The threshold question is whether appellants have preserved their error.  At the time the charge was given to the jury, appellants did not object to the charge on the ground that the interrogatories could result in inconsistent answers.  Appellants also did not object when the verdict was returned.  The consideration of this issue would have

been better served if appellants had made their objection at least at the time that the jury returned its verdict so that the court could evaluate whether or not it was inconsistent and could have sent it back to the jury to reconsider. But, appellants did not waive their right to complain of inconsistent answers by failing to object. If answers to jury interrogatories are in irreconcilable conflict, then the judge has no authority to enter judgment based upon those answers. *Fugitt v. Jones*, 549 F.2d 1001, 1005 (5th Cir.1977). Thus, failure to object does not waive the right to raise the issue in a motion for new trial when answers to interrogatories result in irreconcilable conflict. *Guidry v. Kem Manufacturing Company*, 598 F.2d 402, 407 (5th Cir.1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980); *Mercer v. Long Manufacturing NC, Inc.*, 671 F.2d 946, 947 (5th Cir.1982); *Alverez v. J. Ray McDermott*, 674 F.2d 1037 (5th Cir.1982). We conclude that appellants have met the procedural requirement to raise the inconsistent verdict claim.

*Brunner*, 779 F.2d at 297. Notably, in stating its holding, the circuit did not limit it to Rule 49(a) cases.[4] Further, while the court does not set out the questions, it does describe them in enough detail to infer their content as being close to this:

- Were the defendants negligent in leaving oil on the deck of the ship?

- Was the vessel unseaworthy due to having oil on the deck?

- What were the plaintiff's damages, if any?

As will be seen in the following section, this could be viewed as being a general verdict. In short, the state of the law in the Fifth Circuit is less than clear. At a minimum, the circuit does not recognize a waiver argument in Rule 49(a) cases, and although the circuit did allow a waiver argument in *Stancill*, the *Brunner* and *Holt Oil* cases muddy the waters as to whether *Stancill* stands for the broad proposition that waiver will always be available as an argument in Rule 49(b) verdicts.

Added to this is the fact that the adoption of a strong waiver rule is difficult to defend

---

[4]The circuit reached a very similar holding in *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 781 at n. 9 (5th Cir. 1986), *cert. denied*, 481 U.S. 1015 (1987), where it held that a party did not waive the issue by failing to object at the time the jury returned its verdict since "[i]f answers to jury interrogatories are in irreconcilable conflict, then the trial judge lacks authority to enter judgment based upon those answers." Further, the case does not classify the verdict as "general" or "special."

logically.  First, neither Rule 49(a) nor 49(b) contains a waiver provision stating that a party waives

an inconsistency challenge if he or she fails to raise an objection before the jury is discharged.[5]

_____

[5]The full text of Rule 49 is:

**Rule 49.  Special Verdict; General Verdict and Questions**

(a)     Special Verdict.

(1) In General. The court may require a jury to return only a special verdict in the form of a special written finding on each issue of fact. The court may do so by:

(A) submitting written questions susceptible of a categorical or other brief answer;
(B) submitting written forms of the special findings that might properly be made under the pleadings and evidence; or

(C) using any other method that the court considers appropriate.

(2) Instructions. The court must give the instructions and explanations necessary to enable the jury to make its findings on each submitted issue.

(3) Issues Not Submitted. A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury. If the party does not demand submission, the court may make a finding on the issue. If the court makes no finding, it is considered to have made a finding consistent with its judgment on the special verdict.

(b)     General Verdict with Answers to Written Questions.

(1) In General. The court may submit to the jury forms for a general verdict, together with written questions on one or more issues of fact that the jury must decide. The court must give the instructions and explanations necessary to enable the jury to render a general verdict and answer the questions in writing, and must direct the jury to do both.

"Statutory construction begins with the ordinary meaning of the text." *TLI, Inc. v. U.S.*, 100 F.3d 424, 427 (5th Cir. 1996).  The clear and unambiguous wording of subdivision 49(b)(4) states that "judgment must not be entered" by the Court if the jury's answers are inconsistent, and "the court must direct the jury to further consider its answers and verdict, or must order a new trial."  FED. R. CIV. P. 49(b)(4).  Thus, in *Schaafsma v. Morin Vermont Corp.*, 802 F.2d 629, 634 (2nd Cir. 1986), the court rejected a waiver argument under Rule 49(b) on the rationale that Rule 49(b) specifically provides that in the case of inconsistency the "judgment shall not be entered" and thus "while a party's failure to object to such a double inconsistency carries some weight in our analysis on appeal,

---

(2) Verdict and Answers Consistent. When the general verdict and the answers are consistent, the court must approve, for entry under Rule 58, an appropriate judgment on the verdict and answers.

(3) Answers Inconsistent with the Verdict. When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may:

(A) approve, for entry under Rule 58, an appropriate judgment according to the answers, notwithstanding the general verdict;

(B) direct the jury to further consider its answers and verdict; or

(C) order a new trial.

(4) Answers Inconsistent with Each Other and the Verdict. When the answers are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court must direct the jury to further consider its answers and verdict, or must order a new trial.

FED. R. CIV. P. 49.

the terms of Rule 49(b) make it the responsibility of a trial judge to resolve the inconsistency even when no objection is made." *Id.* (internal quotations and citations omitted).

One of the rationales offered by courts that have interpreted Rule 49(b) to contain an implied waiver provision is that "[t]he purpose of the rule is to allow the original jury to eliminate any inconsistencies without the need to present the evidence to a new jury," which also "prevents a dissatisfied party from misusing procedural rules and obtaining a new trial for an asserted inconsistent verdict." *Lockard*, 894 F.2d at 304. *See also, Pensacola Motor Sales Inc. v. Eastern Shore Toyota*, LLC, 684 F.3d 1211, 1225 (11th Cir. 2012); *Radvansky*, 496 F.3d at 618; *Stancill*, 497 F.2d at 536. But this same rationale applies equally to a case submitted to a jury through a Rule 49(a) special verdict. As the Second Circuit has acknowledged, "the basis for a sharp distinction regarding waiver between Rule 49(a) verdicts and Rule 49(b) verdicts is unclear." *Denny v. Ford Motor Co.,* 42 F.3d 106, 111(2nd Cir. 1994).[6]

Other courts have justified the implied waiver rule by reference to the text of Rule 49(b), which states that in the case of inconsistent jury verdicts, the first directive to the court is that it "must direct the jury to further consider its answers and verdict," while Rule 49(a) does not contain this language. Based on the absence of the re-submission language in Rule 49(a), some courts have

---

[6]Thus, the Second and the First Circuits have held that a party waives an inconsistency objection under either Rule 49(a) or 49(b), if the party fails to raise such an objection before the jury is discharged. *See e.g., Denny,* 42 F.3d at 110-11(holding that there should be no distinction between 49(a) and 49(b), and that waiver under either provision should be determined on a case-by-cases basis); *Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 836 (1st Cir. 1990) (holding that party waived inconsistency argument under Rule 49(a) by not objecting before jury was dismissed); *Frey v. Alldata Corp.*, 895 F. Supp. 221, 223 (E.D. Wis. 1995) (same); *Manes v. Metro-North Commuter Railroad,* 801 F. Supp. 954, 961(D. Conn. 1992) (same).

9

found that waiver applies to an inconsistency challenge under Rule 49(b), but not Rule 49(a).  As

the 10th Circuit reasoned:

> Unlike Rule 49(b), Rule 49(a) does not contain a specific direction to send the jury
> back for further deliberations in the event of an inconsistency in the jury's answers.
> Therefore, Rule 49(a) does not require a party to object to the inconsistencies in a
> jury's answers to a special verdict before the jury is discharged in order to preserve
> his right to challenge the inconsistencies in a subsequent motion or on appeal.

*See Bonin v. Tour West, Inc.*, 896 F.2d 1260, 1263 (10th Cir. 1990) (citation omitted).  This reasoning

is no more persuasive than the rationale just discussed.  The Fifth Circuit has specifically addressed

the fact that Rule 49(a) does not contain a re-submission provision, but have nevertheless held that

both Rule 49(a) and Rule 49(b) verdicts permit re-submission when the results are inconsistent.  *See,*

*e.g., Wavelinq, Inc. v. JDS Lightwave Products Group, Inc.*, 2008 WL 3540200 at *5 (5th Cir. Aug.

14, 2008).  The Circuit explained:

> The practice of resubmission to the jury for clarification when the verdict is
> conflicting is well-established. Federal Rule of Civil Procedure 49(b) explicitly
> allows a district court to "direct the jury to further consider its answers and verdict"
> when the answers to interrogatories are inconsistent with the general verdict or each
> other.  Rule 49(a), which concerns special verdicts, does not explicitly provide for
> resubmission to the jury.  However, we have held that special verdicts, such as the
> one involved in this case, should be treated the same because Rule 49(a) does not
> prohibit resubmission of inconsistent verdicts and it has long been the practice of this
> circuit.

*Id*.  The Circuit reached the same result twenty years earlier in *Nance v. Gulf Oil Corp.*:

> Contrary to Gulf's assertions, Rule 49(a) does not prohibit resubmission of a 49(a)
> verdict form. While Rule 49(a) unlike 49(b) does not provide for resubmission of a
> verdict form, Rule 49(a) certainly does not preclude resubmission. Furthermore, it
> has long been established in this Circuit that inconsistent special verdict answers may
> be resubmitted to a jury for clarification of the inconsistency.

*Nance v. Gulf Oil Corp.*, 817 F.2d 1176, 1178 (5th Cir. 1987)  (internal quotations and citations

omitted).  Thus, the different wording in the two subsections itself does not provide a compelling

rationale for the argument that a party waives an inconsistency challenge under Rule 49(b), but not Rule 49(a), when the party fails to raise such an objection before the jury is discharged.

Having considered all of the above, the Court concludes first that Fifth Circuit precedent does not mandate that a party automatically waives an inconsistency argument in a Rule 49(b) case if that party fails to raise an objection before the jury is discharged in the case. In addition, the Court concludes that the case law from other jurisdictions which have adopted this rule is not persuasive and declines to follow those cases. Based upon these conclusions, the Court finds that regardless of how the verdict in this case is characterized under Rule 49, BASF and FinishMaster have not waived any argument they have that the verdict in this case was inconsistent.

### B. Was the verdict in this case "general" or "special"?

Even if the Court has misread the state of the law in the Fifth Circuit on this issue, there is still the question of whether the verdict here was a special or a general verdict, as, at most, in the Fifth Circuit the waiver argument only applies to general verdicts under Rule 49(b). Historically, most jury cases in federal courts were resolved by a general verdict in which the jury was simply asked to find for the plaintiff or for the defendant. 9B CHARLES ALAN. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2501. In 1937, Rule 49 was adopted to make available to trial judges two different procedures as discretionary alternatives to the general verdict. *Guidry v. Kem Mfg. Co.,* 598 F.2d 402, 405 (5th Cir. 1979). Under Rule 49(a), or the "Special Verdict" subdivision, the trial judge was given authority to dispense with the general verdict altogether and instead submit the various fact issues in the case to the jury in the form of individual fact questions, on each of which the jury would return a special verdict. 9B CHARLES ALAN.

WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2501.  Thirty-three years

ago, the Fifth Circuit noted that:

> [t]he special verdict permitted by Rule 49(a) is a splendid device for clarification of
> jury verdicts and for focusing the jurors' attention on the disputed facts without the
> possible confusion that may result from a lengthy charge concerning the different
> legal rules that would apply if the jury reaches one factual conclusion rather than
> another.

*Guidry,* 598 F.2d at 405.  But, "like all fine tools, it must be skillfully employed and its successful

use requires the careful attention of counsel for all parties as well as of the court to be certain that

the questions are framed to avoid the possibility of  inconsistent answers."  *Id.* at 405-06.  Rule

49(b), or the "General Verdict with Answers to Written Questions" subdivision, gave courts the

power to ask a jury to return a general verdict (asking the jury to decide who wins), accompanied by

answers to certain interrogatories about particular issues in the case.  *Id.* In more complex cases,

courts may use multiple general verdicts or they can mix and match general and specific verdicts

with regard to different claims.  9B CHARLES ALAN. WRIGHT & ARTHUR R. MILLER, FEDERAL

PRACTICE AND PROCEDURE § 2504.1.

As noted, in order to be able to make a waiver argument, CCC must demonstrate that the

verdict in this case was a general verdict under Rule 49(b).  To do so, CCC relies heavily on an

unpublished opinion from the Northern District of Texas, *Giddy Up*, *LLC v. Prism Graphics, Inc.*,

2008 WL 656504 at * 3 (N.D. Tex. Mar. 12, 2008).  In that case Judge Boyle relied on Eleventh

Circuit caselaw to find that the jury rendered Rule 49(b) general verdicts, and then went on to find

that the defendant had waived any argument that the jury's answers to several questions were

inconsistent.  On the contract claim, the jury was asked:

> Has Giddy Up proved by a preponderance of the evidence that PRISM breached
> [various provisions of the contract]?"

On the fraud and the DTPA clams, the court instructed the jury on the elements of the claims, and then asked:

> Has Giddy Up proved by a preponderance of the evidence that the defendants committed fraud? and

> Has Giddy Up proved by a preponderance of the evidence that the defendants violated the DTPA?[7]

Judge Boyle concluded that these questions constituted the submission of general verdicts on multiple theories of liability under Rule 49(b). *Id.*

CCC argues that the questions submitted in this case are very similar to those in *Giddy Up*, and thus the Court should find that the verdict in this case was submitted under Rule 49(b). As the Defendants point out, there are many more cases—including cases decided by the Fifth Circuit—in which other similar questions were considered to be Rule 49(a) special verdicts. For example, in *Guidry*, discussed above, a plaintiff brought a products liability action against two manufacturers whose chemicals for clearing drains harmed him. The two questions posed to the jury at issue in that case asked:

- Was the product supplied by defendant Kem Manufacturing Company (Kem) defective, or did defendant Kem breach its implied warranty or negligently fail to warn plaintiff, in a manner which was a proximate cause of injury to plaintiff Mr. Guidry?

- Was third-party defendant Kem Manufacturing Company actively negligent in a manner which was a proximate cause of injury to plaintiff?

---

[7]The exact wording of the questions on these last two claims is not contained in the opinion, but it is possible to glean their likely content from what is discussed about those questions, and from the wording on the one question that is quoted in the decision.

*Guidry*, 598 F.2d at 404-05.  The Fifth Circuit concluded that these questions constituted a special verdict under Rule 49(a).  The two questions at issue in this case are difficult to distinguish from those in *Guidry*.  The questions posed were:

- Did CCC prove by a preponderance of the evidence that BASF or FinishMaster committed fraud?

- Has CCC proven by a preponderance of the evidence that its failure to pay BASF the [prepaid monies] is excused [ where the court's instruction limited the meaning of "excuse" to fraud by BASF]?

- Has CCC proven by a preponderance of the evidence that its failure to pay FinishMaster [prepaid monies] is excused [where the court's instruction limited the meaning of "excuse" to fraud by FinishMaster]?

The Fifth Circuit has also found all of the following questions to be special verdicts:

- Do you find from a preponderance of the evidence that on the occasion in question that such a failure, if any, was negligent?[8]

- Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the Plaintiff's injuries?[9]

- Did JDS fail to comply with the Asset Purchase Agreement with regard to (1) "disputed products," (2) "undisputed products," and (3) "earn-out statements"? [10]

- State the amount of damages for any of the three categories to which you have answered "yes" in the first section.[11]

---

[8]*McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 307 (5th Cir. 1993).

[9]*Id.*

[10]*Wavelinq, Inc. v. JDS Lightwave Products Group, Inc.*, 2008 WL 3540200 at * 2, 5 (5th Cir. Aug. 14, 2008).  As with *Giddy Up*, the court does not quote the questions in its decision, so what is set out in the text is this Court's best estimate of what the question stated, based on the discussion contained in this decision.

[11]*Id.*

The Fifth Circuit has even found the following to *not* be a general verdict:

> AS TO BREACH OF WARRANTY:
>
> We, the Jury, find for the Plaintiff, Bill Mercer _____.
> We, the Jury, find for the Defendant, Long Mfg. N.C., Inc. _____.
>
> AS TO DECEPTIVE TRADE PRACTICES:
>
> We, the Jury, find for the Plaintiff, Bill Mercer _____.
> We, the Jury, find for the Defendant, Long Mfg. N.C., Inc. _____.
>
> AS TO STRICT LIABILITY:
>
> We, the Jury, find for the Plaintiff, Bill Mercer _____.
> We, the Jury, find for the Defendant, Long Mfg. N.C., Inc. _____.

*Mercer v. Long MFG N.C., Inc.*, 665 F.2d 61, 64 n. 8, 65 (5th Cir. 1980). Like CCC here, the plaintiff in *Mercer* argued that these three questions amounted to a "general charge with three separate general verdicts, one for each of three separate theories of liability." *Id.* Indeed, the questions do seem simply to ask the jury to state who they find for—the plaintiff or the defendant—as to three causes of action. Despite this, the Fifth Circuit found this to be a special verdict, stating that "[n]o general verdict was rendered by the jury." *Id.* Applying these decisions to the questions at issue here, the Court would conclude that the jury's answers to the questions in this case are plainly special verdicts under Rule 49(a).

Unsurprisingly, courts have been inconsistent in how they characterize verdicts. The Second Circuit has acknowledged that "there is no clear definition in our caselaw of what constitutes a Rule 49(a) verdict and what constitutes a Rule 49(b) verdict." *Denny v. Ford Motor Co.*, 42 F.3d 106, 111(2nd Cir. 1994). The *Denny* court further pointed out that it had held in a previous case that a verdict form asking five questions calling for a legal conclusion was a special verdict under Rule 49(a), despite the fact that it contained no strictly factual questions. *Id.* Within the Fifth Circuit

there have been many inconsistencies.  For example, in *Guidry*, the court found this question was a special verdict under Rule 49(a):

> •    Was third-party defendant Kem Manufacturing Company actively negligent in a manner which was a proximate cause of injury to plaintiff?

*Guidry*, 598 F.2d at 404-05.  Yet, just five years earlier, the court found an almost identical question to be a general verdict under Rule 49(b):

> •    Was Jimmy L. Whitley guilty of any negligence?  If so, was his negligence a proximate cause of the collision?

*Stancill* , 497 F.2d at 534-5.  *See also*, *Giddy Up*, 2008 WL 656504 at *4 n. 1 (conceding that court's interpretation of the verdict in the case conflicted with the Fifth Circuit's decision in *Mercer*).

This lack of consistency demonstrates the arbitrary nature of deciding whether a verdict is a "general" or "special" verdict.  While courts have referred very generally to the concepts behind "general" and "special" verdicts, there is no clear test used to distinguish between them.  Thus, the Court is reluctant to pigeon-hole the verdict form and instructions in this case into either Rule 49(a) or 49(b).  The charge submitted in this case—like every charge used by this Court—contains some of the characteristics of a special verdict, as well as some of those of a general verdict with answers to written questions.  However, if forced to decide the issue, the Court would conclude that the jury verdict in this case better fits within the framework of a Rule 49(a) special verdict, than a Rule 49(b) general verdict.  Thus, even if there is a waiver argument available under Rule 49(b), that argument is inapplicable to the verdict returned in this case.[12]

----

[12]The Court must admit that it was surprised to learn of the tortured state of the law on this issue.  Not only is there is no consensus among the federal courts of appeal regarding whether a party waives an inconsistency challenge under Rule 49(a), (b) or both, but the law regarding whether any particular question is properly characterized as a "special" or "general" verdict is all over the board as well.  Rule 49 was adopted in 1937, and its substance has not been amended since.  As noted in

### III.    Was the Verdict Inconsistent?

With these conclusions, the Court can turn to the "real" issue here—were the jury's answers inconsistent?  First, the applicable standard is provided by the Seventh Amendment, which requires courts "to make a concerted effort to reconcile apparent inconsistencies in answers to special verdicts if at all possible."  *Alverez v. J. Ray McDermott & Co.*, 674 F.2d 1037, 1040 (5th Cir. 1982).  Courts "must attempt to reconcile the jury's findings, by exegesis, if necessary, before [they] are free to disregard the jury's verdict and remand the case for new trial."  *Id.* (internal citations and quotation omitted).  "Where, however, the answers cannot be reconciled after a concerted effort, a new trial must be granted."  *Guidry,* 598 F.2d at 406 (internal citations and quotations omitted).   The test for determining whether the jury's answers to special verdicts are inconsistent is well-established in the Fifth Circuit:

> [T]he test to be applied in reconciling apparent conflicts between the jury's answers is whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted, even though the form of the issue or alternative selective answers prescribed by the judge may have been the likely cause of the difficulty and largely produced the apparent conflict. . . . If on review of the District Court's judgment we find that there is no view of the case which makes the jury's answers consistent and that the inconsistency is such that the special verdict will support neither the judgment entered below nor any other judgment, then the judgment must be reversed and the cause remanded for trial anew.

---

the text, trying to characterize a modern verdict as "general" or "special" is challenging, as most verdicts simply do not fit well into either category.  The Court questions the remaining vitality of this distinction, and further questions why it makes sense to preserve a rule which contains language supporting the argument that a party may waive an inconsistent verdict in one instance, but not in the other.  Whatever the rule of waiver is, it should be the same in both instances, and the distinction between general and special verdicts has little application to current practice.  It would seem that amendments to this rule are ripe for consideration by the Committee on Rules of Practice and Procedure.

*Alverez*, 674 F.2d at 1040 (citing *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973).   In attempting to reconcile special verdicts, courts must "look beyond the face of the interrogatories to the court's instructions as well." *Id.*  In addition, "the court must view the evidence in the light most favorable to upholding the jury's decision by a finding of consistency." *Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 343 (5th Cir. 2001).   Finally, district courts have wide discretion in determining whether the jury's answers are consistent.  *Richard v. Firestone Tire & Rubber Co.*, 853 F.2d 1258, 1260 (5th Cir. 1988).  "The district judge, who has observed the jury during the trial, prepared the questions and explained them to the jury, is in the best position to determine whether the answers reflect confusion or uncertainty." *Id.*

As noted, Defendants argue that there is an irreconcilable conflict between Questions 3, 5 and 6 on the one hand, and Questions 7 and 9 on the other.  The Court must look at each of these questions and as well as the Court's instructions related to them to determine whether "the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted." *Alvarez*, 674 F.2d at 1040.  Question Three asked: "Did CCC prove by a preponderance of the evidence that BASF or FinishMaster committed fraud?"  The Court instructed the jury that "Fraud" occurs when:

    a.    a party makes a material misrepresentation, and

    b.    the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and

    c.    the misrepresentation is made with the intention that it should be acted on by the other party, and

    d.    the other party relies on the misrepresentation and thereby suffers injury.

Charge at p. 8.  The Court further instructed the jury that "misrepresentation" means:

a false statement of fact; or a promise of future performance made with an intent, at the time the promise was made, not to perform as promised; or a statement of opinion based on a false statement of fact; or a statement of opinion that the maker knows to be false; or an expression of opinion that is false, made by one claiming or implying to have special knowledge of the subject matter of the opinion.

Charge at p. 8-9.  The Court further instructed the Jury:

If you find that the CCC has proven by a preponderance of the evidence that BASF or FinishMaster made [any of a list of alleged representations], and that any such representation meets each and every element listed above for 'fraud,' then you will answer this question "Yes."  Otherwise you will answer the question "No."

Charge at p. 9.   The Jury answered Question Three "Yes" as to both Defendants.

Question Five asked "Did CCC prove by *clear and convincing evidence* that BASF or FinishMaster committed fraud?" The Court instructed the jury the following:

If you find that BASF or FinishMaster committed fraud, then you are to consider whether their conduct supports the award of punitive damages.  This requires proof of the fraud by what is called "clear and convincing evidence."  Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the matter at issue.  This involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard; however, proof to an absolute certainty is not required.  If you find that the CCC has proven by clear and convincing evidence that the defendant committed fraud, answer "Yes."  Otherwise, answer "No."

Charge at p. 11-12.  The Jury answered "Yes" as to both Defendants and awarded $1,500,000 in punitive damages against  BASF and $750,000 against FinishMaster.

Questions Seven and Nine each asked effectively the same question: "Has CCC proven by a preponderance of the evidence that its failure to pay [BASF and FinishMaster] the [prepaid monies] is excused?"  The Court's instructions contained only one possible excuse for the jury to consider:

CCC's failure to comply with the Agreement is excused *if all* of the following circumstances occurred:

    1.      [BASF or FinishMaster]
        a.      misrepresented or concealed material facts;
        b.      knew at the time it made the representations that they were untrue;
        c.      intended or reasonably expected that CCC would act upon the representations; and

    2.      CCC
        a.      did not know that the representations were untrue when they were made and acted upon;
        b.      reasonably relied upon the representations in good faith to its detriment; and
        c.      would be prejudiced by its reliance on the representations if the other party is permitted to deny the proof thereof.

Charge at 13-16 (emphasis added). The Jury answered Questions Seven and Nine "No."

The Jury's answers to the fraud questions (Questions Three and Six) are in direct conflict with its answers on the excuse questions (Questions Seven and Nine) since both questions required the Jury to find that BASF and FinishMaster made a material false misrepresentation to CCC. The charge clearly and unambiguously instructed the Jury that to find fraud, the jury would have to find that Defendants made a material misrepresentation to CCC, with knowledge of its falsity or recklessly without any knowledge of the truth, with the intent that it would be relied upon, and that the CCC relied on the misrepresentation and suffered injury. Charge at p. 8-9. The jury found these elements not only by a preponderance of the evidence, but also by "clear and convincing evidence" when it awarded punitive damages for the fraud. The Court's instructions to the Jury on excuse were effectively identical to the affirmative fraud question, also requiring the jury to find that Defendants made an intentional and material misrepresentations that they expected CCC to rely on and that CCC did in fact rely on to its detriment. See Charge at 15-16. As already noted, in direct conflict with their answers to Questions Three and Six, the jury concluded that CCC had not demonstrated these

elements buy a preponderance of the evidence, and thus found that CCC was not excused from its failure to make the repayments due under its contract with each defendant.

While the Court's instructions were slightly different for the excuse and fraud questions,[13] both questions required the jury to find that Defendants committed an intentional and material misrepresentation. The jury's finding that Defendants committed fraud by committing an intentional misrepresentation is in direct conflict with its finding that CCC was not excused from its obligations under the contracts because Defendants did not make an intentional misrepresentation. *See Mercer*, 665 F.2d at 66 (holding that there was a direct conflict between jury's answers to interrogatories where jury had concluded that defendant had breached warranty, but had not violated Texas DTPA where district court had specifically charged that breach of express or implied warranty was violation of the Act). While the answers to Questions Seven and Nine may have reflected the jury's intention to prevent CCC from receiving a windfall in the case (as CCC contends), "it also demonstrates a view of the facts patently contrary" to that reflected in the answers to Questions Three and Five. *Guidry*, 598 F.2d at 407. As the Fifth Circuit discussed in *Guidry*, "the fact analysis reflected by the negative answer to questions Seven and Nine, is "Defendants *did not* commit fraud," while the fact analysis essential to the positive answers in Three and Six is "Defendants *did* commit fraud." The jury's answers to these questions cannot be reconciled because they cannot "fairly be said to represent a logical and probable decision on the relevant issues."

---

[13]As noted previously, each of the fraud issues was governed by a different state's law. The affirmative fraud claim fell under Texas law, the BASF contract defense was governed by New Jersey law, and the FinishMaster fraud defense was governed by Indiana law.

**IV.     Conclusion**

Unfortunately, this means that the Court must order a new trial on CCC's affirmative fraud claim and its fraud defenses to the BASF and FinishMaster breach of contract counterclaims.  The Court reaches this conclusion unhappily, as the Court is always extremely reluctant to dislodge a jury's considered decision.  But the Court does not believe it has any other reasonable option in light of the facts of this case, and the jury's answers.

Based upon the foregoing, Defendants' Rule 49 Motion for a New Trial (Clerk's Docket No. 237) is **HEREBY GRANTED IN PART** as to CCC's affirmative fraud claim and as to its fraud defenses to BASF's and FinishMaster's breach of contract counterclaims.  The Motion is **DENIED** as to the jury's verdict on the breach of warranty claims.  The Court will withhold entry of judgment on the warranty claims until the new trial is completed.

**FINALLY**, as a result of these rulings, Plaintiff's Motion for Entry of Judgment (Clerk's Docket No. 230) and Defendants' Conditional Motion for Entry of Judgment (Clerk's Docket No. 240) are both **DENIED** as **MOOT**.

SIGNED this 5th day of November, 2012.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE